NATIONAL LABOR RELATIONS BOARD, Petitioner (81–1436), Respondent (81–1474),

v.

HOLLAND AMERICAN WAFER COMPANY, Respondent (81–1436), Petitioner (81–1474).

Nos. 81–1436, 81–1474.

United States Court of Appeals, Sixth Circuit.

Argued June 12, 1982.

Decided July 7, 1982.

Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., Washington, D. C., John Elligers, Detroit, Mich., for N. L. R. B.

J. Michael Guenther, Miller, Johnson, Snell & Cummiskey, Ann Arbor, Mich., Barry R. Smith, Charles C. Hawk, Miller, Johnson, Snell & Cummiskey, Grand Rapids, Mich., for Holland American Wafer Co.

Before KEITH, Circuit Judge and WEICK and PHILLIPS, Senior Circuit Judges.

## ORDER

This consolidated appeal is before the Court on the application of the National Labor Relations Board ("Board") pursuant to Section 10(e) of the National Labor Relations Act, as amended (29 U.S.C. Sec. 151, et seq.), for enforcement of its order issued against Holland American Wafer Company ("Holland") on January 14, 1981. The Board's order is reported at 254 NLRB 47 (1981).

The undisputed facts are as follows. In July, 1979, Hank Caltibiano, a representative of Bakery, Confectionery and Tobacco Workers International Union ("Union") in charge of the pre-election organizing campaign, met with Holland employees. Subsequently, Caltibiano met with Holland employees on several other occasions. At one such meeting in August of 1979, Caltibiano discussed the Union's representation of workers employed by several of Holland's customers. He stressed that the Union had the right to ask those customers "to discontinue doing business with Holland American" unless Holland agreed to their contract demands. Caltibiano also emphasized that this "pressure" would make it unnecessary for Holland employees to strike to obtain an acceptable contract.

On August 20, 1979, the Union filed a petition for representation with the Board's Regional Office. On August 29, Caltibiano telephoned the employees who served on the in-plant organizing committee. He gave the organizing committee precise instructions on the issue of the Union's ability to influence Holland through its customers. The instructions were as follows:

"[T]he Union has the right to ask Keebler and other companies it has a relationship with to stop doing business with Holland American. It also has the right to pressure companies—these companies—into cooperating through the use of the Union's constitutional right. These rights have been affirmed by the U.S. Supreme Court decisions such as Labor Board vs. Servette, [377 U.S. 46, 84 S.Ct. 1098, 12 L.Ed.2d 121 (1964) ]."

Caltibiano's words were communicated to other employees.

On August 30, the Regional Director approved a stipulation for Certification Upon a Consent Election executed by the parties. The Union's efforts in "educating" Holland employees were quite successful.

Holland's management became aware of Caltibiano's efforts to "educate" Holland employees. In September, approximately one month after Caltibiano had issued his "instructions" endorsing Union "pressuring" of Holland's customers, Holland replied to the Union's campaign rhetoric. Holland sent a letter to its employees which stated that Holland viewed the "pressure" referred to by the Union as a violation of applicable federal law.

On October 8, the Union sent a full page notice to all Holland employees. The mailing referred to the fifteen customers as "very special" companies and that they represented "fifteen good reasons to vote yes" in the Union election. The document contained a cartoon of an employer in the clutches of the fifteen companies. The cartoon is labeled "the boss caught in a squeeze". The employer is represented as saying "why aren't you striking?"

On October 13, 1979, Caltibiano met with over fifty Holland employees and read them selected portions of the Supreme Court's opinion in *NLRB v. Servette*, 377 U.S. 46, 84 S.Ct. 1098, 12 L.Ed.2d 121 (1964). He explained that this was the source of the ability to pressure Holland through its customers. Holland employees were also assured that the Union would call Holland customers the day after the election. Caltibiano concluded by emphasizing that a strike would be unnecessary because of the Union's relationship with Holland's customers.

The election was conducted on October 18. The stipulated unit consisted of all full-time and regular part-time production, maintenance and shipping and receiving employees at Holland's Grand Rapids, Michigan facility. Excluded from the bargaining unit were all transport drivers, salesmen, office clerical employees, guards, and supervisors. The Union won the election by a vote of 135 to 27, with 3 challenged ballots.

Holland filed an objection to the election with the Regional Director alleging that the Union had advocated the use of illegal secondary boycotts.

On October 25, the Regional Director determined that the objection could best be resolved by holding a hearing. A hearing was held on November 14, 1979. On December 5, 1979, the Hearing Officer issued a report recommending that the objection be overruled and the Union certified. On May 15, 1980, the Board adopted the Hearing Officer's findings and recommendations and certified the Union.

On May 19, 1980, the Union requested that Holland inform it of dates on which collective bargaining could begin. On June 5, Holland refused to bargain, contending that the Board had erred in certifying the Union. The Union filed an unfair labor practice charge on June 16 (A. 18).

On July 11, the Board's General Counsel issued a complaint, alleging that Holland had violated Section 8(a)(5) and (1) of the Act by refusing to bargain with the Union. Holland answered admitting that it had refused to bargain with the Union, but contended that it had no legal obligation to do so, since the Union allegedly had not been properly certified.

The Board found that all issues which Holland raised in the unfair labor practice proceeding were or could have been litigated in the underlying representation proceeding and could not, therefore, be relitigated. The Board also found that Holland had not adduced any newly discovered or previously unavailable evidence, or alleged special circumstances requiring the Board to reconsider its decision in the representation proceeding. Accordingly, the Board granted the motion for partial summary judgment and found that Holland had violated Section 8(a)(5) and (1) of the Act by refusing to bargain with the Union.

The Board's order requires Holland to cease and desist from its refusal to bargain and from interfering with employees in the exercise of their Section 7 rights. The Board also ordered Holland to bargain with the Union, to embody any understanding reached in a signed agreement, and to post appropriate notices.

On appeal, the Board properly contends that determining whether campaign misrepresentations are substantial enough to warrant setting aside an election is within the Board's discretion. *See NLRB v. Allen Mfg. Co.*, 364 F.2d 814, 816 (6th Cir. 1966). We agree. Moreover, we recognize that "absolute precision of statement and complete honesty are not always attainable in an election campaign, nor are they expected by employees." *Hollywood Ceramics Co.*, 140 NLRB 221, 223 (1962). "Therefore,

not every inaccuracy in election campaign propaganda requires the Board to intervene and set aside an election." *Follett Corp. v. NLRB*, 397 F.2d 91, 95 (7th Cir. 1968). The test for determining whether to set aside an election was set forth in *Hollywood Ceramics*. The Board must consider whether the statements: 1) substantially misrepresent a material fact; 2) are timed so that the other party is prevented from making an effective reply; 3) are made by a party who had special knowledge of the true facts; and 4) concern matters outside the independent knowledge of the employees so that they are unable effectively to evaluate the statements. *Hollywood Ceramics*, 140 NLRB at 224.

█ Holland's argument is that the Union allegedly misrepresented its ability to engage in an illegal secondary boycott against Holland's customers to obtain favorable contract concessions without a strike. This contention is without merit. The Union was extremely careful in its use and description of the activities which it intended to encompass within the term "pressure". There is no evidence which would indicate that the Union intended to induce employees of Holland's customers to engage in work stoppages. On the contrary, Caltibiano testified that he never indicated the Union would slow down production at the facilities of Holland's customers.

█ The Union's use of the term "pressure" is neither misleading nor exceedingly ambiguous when viewed within the context of the references to *Servette*, 377 U.S. 46, 84 S.Ct. 1098, 12 L.Ed.2d 121. Under *Servette*, the Union could engage in many activities which ultimately could cause Holland's customers to exert "pressure" on it. For example, the Union could appeal to the management of Holland's customers to exercise their business judgment and cease dealing with Holland. *Servette*, 377 U.S. at 49–50 n. 4, 52–54, 84 S.Ct. at 1101 n. 4, 1102–1103. Moreover, the Union could distribute handbills or conduct informational picketing aimed at informing the public that it has a dispute with Holland, a supplier of the neutral employer being picketed.

Such publicity is protected activity provided it does not induce employees of the neutral employer to refuse to perform their duties. *Id.* at 49, 54–56, 84 S.Ct. at 1101, 1103–1104.

Holland has failed to demonstrate that the Union's statements are a substantial misrepresentation of a material fact. The first prong of the *Hollywood Ceramics* test, therefore, has not been satisfied.

Assuming arguendo that the first prong of the *Hollywood* test was met, Holland had and utilized some of its opportunities to reply to the Union's propaganda. Holland admits that it was aware of the Union's propaganda concerning *Servette* weeks before the election. Moreover, in September, Holland availed itself of an opportunity to reply to the Union propaganda. Holland sent a letter to its employees which emphasized that all contract terms had to be negotiated and that it was not required to agree to anything. Finally, the letter indicated that a strike may be necessary before the Union could achieve its goals.

Suffice to say, that Holland has not met their heavy burden of demonstrating that the Board "acted arbitrarily and capriciously and abused the discretion delegated to it by Congress in matters relating to representation election proceedings." *NLRB v. Dean Foods Co.*, 421 F.2d 664 (6th Cir. 1970), *cert. denied*, 398 U.S. 939, 90 S.Ct. 1843, 26 L.Ed.2d 271. Upon consideration of the briefs, the record, and the arguments of counsel, this Court is of the opinion that the Board's order must be enforced. Accordingly, it is so ordered.