COLLOTON, Circuit Judge, dissenting. The issue in this appeal is whether the Plaintiffs’ complaint adequately alleged that the Union violated § 8(b)(4)(ii)(B) of the Labor Management Relations Act, 29 U.S.C. § 158(b)(4)(ii)(B), by picketing businesses that were not primary employers of the Union’s members. As the court explains, the statute makes it an unlawful labor practice for a labor organization “to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce,” where an object thereof is “forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person.” It is undisputed that Plaintiffs adequately alleged that the Union threatened, coerced, or restrained the businesses known as the Markets, and that the Markets were not a primary employer. The contested issue is whether the complaint alleged a forbidden object. The complaint did adequately allege that an object of the Union’s picketing activity was to force the Markets to cease doing business with suppliers, contractors, and patrons of the Markets. The court concludes that this allegation is insufficient as a matter of law. In my view, the complaint adequately alleges a violation of the statute. The provision is written broadly to forbid actions taken with an object to force “any person” (here, the Markets) to cease doing business “with any other person” (here, the Markets’ suppliers, contractors, and patrons). As the Supreme Court once observed, “[djespite criticism from President Truman as well as from some legislators that the secondary boycott provision was too sweeping, the Congress refused to narrow its scope. Recognizing that ‘illegal boycotts take many forms,’ Congress intended its prohibition to reach broadly.” Int’l Longshoremen’s Ass’n v. Allied Int’l, Inc., 456 U.S. 212, 225, 102 S.Ct. 1656, 72 L.Ed.2d 21 (1982) (citation omitted). Although the statute “does not speak generally of secondary boycotts,” and “describes and condemns specific union conduct directed to specific objectives,” ante, at 644 (internal quotation omitted), the complaint here alleged specific prohibited conduct taken with a specific prohibited objective. The court declines to apply the plain language of the statute because it could mean that every picket of a secondary employer is prohibited by § 8(b)(4)(ii)(B).[5] In support of a narrowing construction, the court relies on Local 761, Int’l Union of Elec., Radio & Mach. Workers v. NLRB, 366 U.S. 667, 81 S.Ct. 1285, 6 L.Ed.2d 592 (1961). That decision, however, involved picketing against a primary employer. The Court said that the predecessor to § 8(b)(4)(ii)(B), former § 8(b)(4)(A) of the National Labor Relations Act, “could not be literally construed; otherwise it would ban most strikes historically considered to be lawful, so-called primary activity.” Id. at 672, 81 S.Ct. 1285 (emphasis added).[6] The rationale of Local 761 does not apply to this dispute involving a so-called secondary employer. As the National Labor Relations Board observed when examining the same statute: “But though it is plain that primary action is to be excepted from the scope of Section 8(b)(4)(A), there is nothing in the legislative history to warrant a conclusion that where secondary activity is involved, Congress intended to draw a distinction between different kinds, so as to include some but not others.” Longshoremen, ILA Local 333 (N.Y. Shipping Ass’n), 107 N.L.R.B. 686, 711 (1954). Rather, thought the Board, “[t]here is evidence ... that Congress, with the purpose of confining the area of economic conflict in labor disputes to direct disputants, intended Section 8(b)(4)(A) to condemn all action directed against or which has the effect of injuring the business of third persons not involved in the basic disagreement giving rise to the conflict.” Id.; accord Local 272, Iron Workers, 195 N.L.R.B. 1063, 1063 (1972) (concluding that a union violated § 8(b)(4)(ii)(B) by picketing a neutral employer “with the object of causing a business disruption between it and the subcontractors on the project and any other employer with whom it was doing business,” but not with the primary employer who had gone out of business). The Supreme Court in Tree Fruits agreed that “picketing which persuades the customers of a secondary employer to stop all trading with him was ... to be barred” by the statute. 377 U.S. at 71, 84 S.Ct. 1063. The D.C. Circuit explained well why the prohibition of § 8(b)(4)(ii)(B) is not limited to actions aimed at causing a neutral or secondary employer to cease doing business with a “primary employer” when the statute refers to “any person”: Although it is frequently true that the object of secondary picketing is to obstruct dealings with the primary employer, Congress did not so limit its language. And a moment’s reflection establishes that such a limitation would not have been consonant with the central legislative purpose. That purpose was to confine labor conflicts to the employer in whose labor relations the conflict had arisen, and to wall off the pressures generated by that conflict from unallied employers. If one of the latter could with impunity be forced to suspend its business relations with all persons other than the primary employer, the evil which Congress sought to get at would be complete. Many secondary employers would have no occasion to have commercial intercourse with the primary employers. Is it to be supposed that Congress intended that their businesses could be stopped by secondary pressures simply because of this circumstance? We think not[.] Miami Newspaper Pressmen’s Local No. 46 v. NLRB, 322 F.2d 405, 410 (D.C. Cir. 1963); accord Nat’l Mar. Union v. NLRB, 346 F.2d 411, 417-18 (D.C. Cir. 1965). The violation alleged here comes within the plain language of § 8(b)(4)(ii)(B). Judicially created limitations on the plain language that avoid banning “most strikes historically considered to be lawful, so-called primary activity,” Local 761, 366 U.S. at 672, 81 S.Ct. 1285, are not applicable to this dispute. I would therefore reverse the judgment of the district court and remand for further proceedings. . The court’s concern is likely overstated. Informational or product picketing might well be permitted if it is undertaken with a permissible object or motive. E.g., NLRB v. Fruit & Vegetable Packers Local 760 (Tree Fruits), 377 U.S. 58, 72, 84 S.Ct. 1063, 12 L.Ed.2d 129 (1964); Lane Crane Serv., Inc. v. Int’l Bhd. of Elec. Workers, Local Union No. 177, 704 F.2d 550, 553 (11th Cir. 1983); NLRB v. Holland Am. Wafer Co., 683 F.2d 135, 138 (6th Cir. 1982); NLRB v. Local 825, A, B, C, D, Int’l Union of Operating Eng’rs, 659 F.2d 379, 384, 387 (3d Cir. 1981). . Local 761 addressed a provision of the Taft-Hartley Act of 1947 that included substantially similar language. See 29 U.S.C. § 158(b)(4)(A) (1952) (making it an unfair labor practice to “encourage the employees of any employer” to engage in a strike or concerted refusal where an object thereof is "forcing or requiring ... any employer or other person ... to cease doing business with any other person.”). The current version of § 8(b)(4)(ii)(B) was enacted in 1959. Land-rum-Griffin Act, Pub. L. 86-257, § 704, 73 Stat. 542-45 (1959).